ORIGINAL

# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 02-1437V
Filed: March 26, 2014
(To be published)

FILED
MAR 26 2014
U.S. COURT OF
FEDERAL CLAIMS

* * * * * * * * * * * * * * * * * * * * * * * *

TONY TURNER and
DAWN TURNER, parents of
Austin Brady Turner, a minor,

            Petitioners,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES

            Respondent.

Attorneys' Fees and Costs to
Former Counsel; Payment
Directly to Counsel.

* * * * * * * * * * * * * * * * * * * * * * * *

## DECISION[1] (ATTORNEY'S FEES AND COSTS)

In this case under the National Vaccine Injury Compensation Program,[2] I issued a Decision on April 13, 2012. As explained in that Decision, Petitioners' case was dismissed because Petitioners, then acting *pro se*, failed to prosecute or prove their case. Petitioners' former counsel, George Tankard, later filed an application for attorney's fees and costs, without the cooperation of the Petitioners. In response to Mr. Tankard's request, I have determined that, under the unusual circumstances of this case, a grant of compensation for attorney's fees and costs, pursuant to § 300aa-15(e), is appropriate, for the reasons set forth below.

---

[1] Because I have designated this document to be published, this document will be made available to the public unless petitioner files, within fourteen days, an objection to the disclosure of any material in this decision that would constitute "medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy." See 42 U.S.C. § 300aa-12(d)(4)(b).

[2] The applicable statutory provisions defining the program are found at 42 U.S.C. § 300aa-10 *et seq.* (2006). Hereafter, individual section references will be to 42 U.S.C. § 300aa.

1

I

## PROCEDURAL BACKGROUND

The Petitioners, Tony Turner and Dawn Turner, filed a petition on Oct 18, 2002, alleging that various vaccinations injured their son, Austin. At that time, Petitioners were represented by attorney George Tankard. On October 29, 2002, a Notice issued, which stayed proceedings in the case pending completion of a general inquiry known as the Omnibus Autism Proceeding.[3] More than five years later, an Order issued, on February 15, 2008, ending the stay and directing Petitioners to file all relevant medical records. On May 28, 2008, Mr. Tankard filed extensive medical records on behalf of Petitioners. More records were filed, on October 1, 2008, along with a statement indicating that the medical record was substantially complete.

Mr. Tankard filed a Motion to Withdraw as counsel of record, on April 9, 2010. In that motion, counsel noted that Petitioners had been advised previously of his intention to withdraw, but Petitioners had not responded to his attempts to discuss this matter with them. That motion was granted on April 15, 2010, and Petitioners were notified that they must represent themselves. (Order, ECF No. 32.) Thereafter, the *pro se* Petitioners were unresponsive to orders from the court, leading to a dismissal of their case on April 13, 2012. Judgment entered on May 17, 2012.

In early November of 2012, Mr. Tankard contacted a member of my staff to clarify the procedure for making a fees application in this case. He was instructed to file whatever information would be relevant to resolving the attorney's fees and costs issue. I issued an Order, on November 15, 2012, scheduling a status conference in December, at which Mr. Tankard's request would be discussed. (Order, ECF No. 39.) The Petitioners were sent a copy of that Order,[4] which instructed them to contact my office in order to participate in the conference.

In compliance with the instructions given by my staff, Mr. Tankard filed a motion for attorney's fees and costs, on November 16, 2012. (Motion, ECF No. 40.) In that Motion, Mr. Tankard requests a "reimbursement of $6,401.70, payable to George G. Tankard, III, for all attorneys' fees and costs" incurred during the course of this proceeding. (*Id.*, at ¶12.) It is notable that counsel requests payment in the form of a check payable *directly to himself*, rather than a payment requiring joint endorsement by both Petitioners and counsel. Mr. Tankard includes a description of his unsuccessful attempts to contact the Petitioners, in order to elicit their cooperation in filing a request for attorneys' fees and costs. (*Id.*, at ¶¶ 7-10.) He acknowledges that he is no longer counsel of record. (*Id*, at ¶ 11.)

---

[3] The Omnibus Autism Proceeding (OAP) consisted of a large group of petitions alleging that certain childhood vaccinations cause or contribute to the development of a serious neurodevelopmental disorder known as "autism spectrum disorder" or "autism." For complete information concerning the OAP, please see http://www.uscfc.uscourts.gov/omnibus-autism-proceeding

[4] The Order dated November 19, 2012, was sent to Petitioners via USPS First Class Mail, as well as by USPS certified mail, return receipt requested. The USPS tracking record indicates that the Order was delivered to Petitioners.

2

On December 3, 2012, I convened a status conference, with the participation of Respondent's counsel, Linda Renzi, and Petitioners' former counsel, Mr. Tankard. Petitioners did not contact my office, as instructed in my Order dated November 19, 2012, nor did they participate in the status conference. An Order issued on December 10, 2012, directing Petitioners to contact a member of my staff, if Petitioners had any objection to Mr. Tankard's request. (Order, ECF No. 42.) Further, Petitioners were instructed to notify the court if they had personally incurred any costs related to their petition. Petitioners did not contact my staff, nor did they file any document objecting to Mr. Tankard's request, or identifying their own personal litigation costs. Petitioners' failure to respond to court orders precludes compliance with General Order #9,[5] thus preventing reimbursement of Petitioners' own litigation expenses, if any.

The Order dated December 10, 2012, also noted that Respondent's counsel would file a response to Mr. Tankard's motion, and directed Mr. Tankard to file a Reply to that Response. On that same day, December 10, 2012, Respondent filed a Response objecting to Mr. Tankard's Motion. (Response, ECF No. 43.) Mr. Tankard filed a Reply, on February 8, 2013, arguing that, "through no fault of his own, [he] is potentially blocked by the willful refusal of Petitioners to respond to either him or the Court, from receiving compensation that is rightfully his." (Reply, ECF No 45.)

## II

## APPLICABLE STATUTORY SCHEME, VACCINE RULES, AND CASE LAW

### A. *Statutory authority*

The statutory authority for awarding compensation to a petitioner is set forth at §15. Section 15(a) provides for compensation in the case of "a vaccine-related injury or death associated with the administration of a vaccine after October 1, 1988." §15(a) (hereinafter, "post-Act" cases.) Compensation for injuries suffered *before* October 1, 1988 ("pre-Act" cases") is authorized by §15(b), which describes a substantially different method for calculating an award. Subsection 15(b)(3) specifies that "reasonable attorneys' fees and costs (as provided in subsection (e) of this section)," shall be included in the compensation awarded "to a petitioner" in pre-Act cases. In contrast, §15(a) does *not* include any mention of an award for *attorneys' fees* for post-Act cases. The authority for awarding attorneys' fees in post-Act cases, rather, is contained at §15(e), as described in the following paragraph. This *Turner* petition concerns an alleged *post-Act* injury, so §15(e) is applicable to this request for attorney's fees.

The Vaccine Act sets forth general conditions and the method for awarding attorney's fees at subsection 15(e).
> (1) In awarding compensation on a petition filed under section 300aa–11 of this title the special master or court shall also award as part of such compensation an amount to cover—
> (A) reasonable attorneys' fees, and
> (B) other costs,

---
[5] See *Newby v. HHS*, 41 Fed.Cl, 392, 393 n. 2 (1998).

3

incurred in any proceeding on such petition. If the judgment of the United States Court of Federal Claims on such a petition does not award compensation, the special master or court may award an amount of compensation to cover petitioner's reasonable attorneys' fees and other costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought.

§15(e). These are the *only* provisions pertaining to attorney's fees in post-Act petitions, while, pre-Act petitions have additional qualifications set forth at §15(b). This *Turner* petition concerns an alleged post-Act injury, so only §15(e) is applicable to an award of attorney's fees.

According to §15(e), special masters have the authority to award "reasonable" attorney's fees and costs in Vaccine Act cases. However, there are two types of post-Act cases described, and the characteristics of the attorneys' fees awards for each type are distinctly different. The two types of cases are: 1) those which receive an award of compensatory damages ("successful"), and 2) those which do not receive any compensatory damages ("unsuccessful"). The U.S. Supreme Court has examined these provisions and determined that, "[a]ttorney's fees are provided, not only for successful cases, but even for unsuccessful claims that are not frivolous." (*Bruesewitz v. Wyeth LLC*, 131 S.Ct. 1068, 1074 (2011).) In this *Turner* case, there was no award of compensatory damages to the Petitioners, so the applicable provision concerns an "unsuccessful" claim.

Within the context of a different "unsuccessful" petition, the U.S. Court of Appeals for the Federal Circuit reviewed §15(e) and concluded that "[t]he determination of the amount of reasonable attorneys' fees and costs is within the special master's discretion." *Saxton v. HHS*, 3 F.3d 1517, 1520 (Fed.Cir. 1993); *see also Shaw v HHS*, 609 F.3d 1372, 1377 (Fed.Cir. 2010). The *Saxton* opinion further states that, "[i]f the petition for compensation is denied, the special master 'may' award reasonable fees and costs if the petition was brought in good faith and upon a reasonable basis; the statute clearly gives him discretion over whether to make such an award." 3 Fed. 3d at 1520.

Of course, in considering evidence and making a determination concerning the good faith and reasonableness of a petition and whether it is appropriate to award attorney's fees and costs, the court is guided by the Vaccine Act itself. The Vaccine Act describes the scope of the special master's authority with regard to gathering evidence that is relevant to attorney's fees, or any other aspect of a petition, as follows:

In conducting a proceeding on a petition a special master--
    (i)    may require such evidence as may be reasonable and necessary,
    (ii)    may require the submission of such information as may be reasonable and necessary,
    (iii)    may require the testimony of any person and the production of any documents as
may be reasonable and necessary.

4

§12(d)(3)(B).) This is a very broad grant of authority, which allows the special master to obtain any information that is reasonable and necessary. This would include the authority to seek out relevant information concerning attorneys' fees, from "any person."

### B. Vaccine Rules

The statutory language is reinforced by the Vaccine Rules,[6] which "govern all proceedings" pursuant to the Vaccine Act. Vaccine Rule 1(a). "In any matter not specifically addressed by the Vaccine Rules, the special master or the court may regulate the applicable practice, consistent with these rules and the purpose of the Vaccine Act." Vaccine Rule 1(b). With regard to taking evidence during a proceeding on a petition,

> **(a) General.** The special master will determine the format for taking evidence and hearing argument based on the specific circumstances of each case and after consultation with the parties.
>
> **(b) Evidence.**
>
>> **(1) Rules.** In receiving evidence, the special master will not be bound by common law or statutory rules of evidence but must consider all relevant and reliable evidence, governed by principles of fundamental fairness to both parties.

Vaccine Rule 8. While Vaccine Rule 8 describes the special master's obligation to "consider all relevant and reliable evidence," Vaccine Rule 15 specifically addresses the authority of the special master to consider information obtained from those who are *not* parties to a case.

> **Third Parties** No person may intervene in a vaccine injury compensation proceeding, but the special master may afford all interested individuals an opportunity to submit relevant written information within 60 days after publication of the petition in the Federal Register, or later, with leave of the special master.

Vaccine Rule 15. Thus, an "interested individual" may submit relevant written information at any time, with leave of the special master.

### C. Case law

An award of attorney's fees and costs to compensate a *former* counsel is generally *not* controversial under the Vaccine Act. Typically, in such situations, the *current* counsel files the petitioner's application for an award that includes payments for *both* current and former counsel.

---

[6] The Vaccine Rules are found at Appendix B to the Rules of the United States Court of Federal Claims.

5

Often, a separate award is made payable in such cases to petitioner and former counsel, jointly.[7] Sometimes, awards are made payable to the petitioner and *current* counsel, jointly, while imposing an obligation on the petitioner to make appropriate distribution to petitioner's *former* counsel.[8] In each of these cases, former counsel received an award for attorney's fees and costs, because someone, usually petitioner's current counsel, filed an application on behalf of former counsel for those fees and costs.

In this *Turner* case, however, there is no current counsel to advocate on behalf of former counsel, and the *pro se* Petitioners have not participated. There have been similar cases in which former counsel have tried to request fees and costs, without the assistance of petitioners or current counsel. In *Bentley v. HHS*, No. 10-240V, 2011 WL 3473380 (Fed. Cl. Spec. Mstr. July 13, 2011), former counsel filed a motion for attorney's fees and costs, and Respondent did not object to an award. In *Gabrielle v. HHS*, No. 07-304V, 2011 WL 6001098 (Fed. Cl. Spec. Mstr. Oct, 5, 2011), former counsel filed an unopposed motion for attorney's fees and costs. In *Piscopo v. HHS*, No. 01-234V, 2005 WL 6115371 (Fed. Cl. Spec. Mstr. Nov. 8, 2005), two former counsel made separate applications for attorneys' fees and costs, and Respondent again did not object. Former counsel in all of these cases were awarded appropriate compensation, since Respondent made no objection.

In *Way v. HHS*, No. 05-588V, 2007 WL 5171110 (Fed. Cl. Spec. Mstr. Nov. 19, 2007), petitioner's counsel withdrew as counsel, and later filed an application for attorney's fees and costs, without the participation of the *pro se* petitioner. Initially, Respondent filed an Opposition to the application of the petitioner's former counsel, but the special master eventually awarded fees and costs for the work of the petitioner's former counsel. (*Id.*)

In his Reply to Respondent's objection to the motion for attorney's fees and costs in this case, Mr. Tankard cited *Gitesatani v. HHS*, No. 09-799V, 2011 WL 5025006 (Fed. Cl. Spec. Mstr. Sept 30, 2011). In *Gitesatani*, petitioner's counsel withdrew from the case, then later requested an award for fees and costs, which was granted, even though the petitioner did not participate. *Id.; see also Tutza v. HHS*, No. 04-223V, 2012 WL 2362594 (Fed. Cl. Spec. Mstr. Apr. 20, 2012)(awarding fees directly to counsel). The special master in *Gitesani* noted that the recent decision in *Avera v. HHS*, 515 F.3d 1343 (Fed.Cir. 2008), "militates against hypertechnical construction of the statute in favor of an interpretation that promotes the underlying purpose of the provision facilitating the award of attorneys' fees and costs, even where the petitioner does not prevail." *Gitesani*, at *6.

---

[7] *See, e.g., Kessler v. HHS*, No. 02-051V, 2007 WL 5632592 (Fed. Cl. Spec. Mstr. Aug 21, 2007); *Gruber v. HHS*, No. 00-749V, 2010 WL 1253000 (Fed. Cl. Spec. Mstr. March 10, 2010); *Cattaneo v. HHS*, No. 10-607V, 2012 WL 716175 (Fed. Cl. Spec. Mstr. Jan. 6, 2012); *Klug v. HHS*, No. 10-574, 2012 WL 5210575 (Fed. Cl. Spec. Mstr. Sept. 24, 2012); *Moldover v. HHS*, No. 09-755, 2012 WL 5363371 (Fed. Cl. Spec .Mstr. Sept. 26, 2012); *Lewis v. HHS*, No. 10-044V, 2012 WL 6062699 (Fed. Cl. Spec. Mstr. Nov. 13, 2012); *Davey v. HHS*, No. 11-794V, 2013 WL 1339169 (Fed. Cl. Spec. Mstr. Mar. 8, 2013); *Johnson v. HHS*, No. 11-398V, 2012 WL 6869845 (Fed. Cl. Spec. Mstr. Dec. 20, 2012).

[8] *See, e.g., Zatuchni v. HHS*, No. 94-058V, 2008 WL 2462717 (Fed. Cl. Spec. Mstr. May 23, 2008); *Nelson v. HHS*, No. 99-575V, 2012 WL 2874373 (Fed. Cl. Spec. Mstr. June 11, 2012; *Hegarty v. HHS*, No. 01-463V, 2012 WL 3893765 (Fed. Cl. Spec. Mstr. Aug. 3, 2012); *Burrell-Smith v. HHS*, No. 11-316V, 2012 WL 4712010 (Fed.Cl.Spec.Mstr. Sept. 5, 2012).

6

Another case that resembles the situation in this case is *Pettitt v. HHS*, No. 10-038V, 2012 WL 3005391 (Fed. Cl. Spec. Mstr. May 11, 2012), wherein petitioners' counsel also withdrew, but later filed a request for fees and costs. The special master granted payment of former counsel's fees and costs.

## III

## RESPONDENT'S ARGUMENT

As noted above, Respondent filed a Response to Mr. Tankard's motion for attorney's fees and costs. (ECF No. 43.) In that filing, Respondent contends that "Mr. Tankard is not the attorney of record in this case, nor have Petitioners filed for attorney's fees and costs on his behalf. As such, Mr. Tankard does not have standing to file his Motion." (*Id.* at 2.) This contention is based on Vaccine Rule 14(b)(3), which requires that "[a]ll filings must be signed in the attorney of record's name."

Respondent specifically acknowledged that Respondent *does not object to the amount* of fees and costs requested by Mr. Tankard. (*Id.,* at fn. 2.) However, despite this concession, if Respondent's argument against former counsel's "standing" to file a motion prevails, then former counsel will not be compensated for work he has performed on this case

## IV

## DISCUSSION

### A. Introduction

Respondent contends that Vaccine Rule 14(b)(3) does not allow any person who is not attorney of record to file a motion into the record of a Vaccine Act case. (Response, ECF No. 43.) According to Respondent's argument, Mr. Tankard does not have "standing" to file anything into the record, since he has withdrawn as counsel and is now a non-party in this case.

Respondent is correct in observing, and Mr. Tankard has acknowledged, that at the time he filed his motion, he was not the counsel of record. Respondent is also correct that the Petitioners have not filed for attorney's fees on his behalf. It is clear that since becoming *pro se* advocates for their petition, the Petitioners have not participated in the proceeding.

### B. *Persons other than the current counsel of record may file information into the record.*

The language that Respondent cites from §14(b)(3) of the Vaccine Rules must be read within the context of Rule 14 as a whole, which pertains to the role of attorneys who practice before the Office of Special Masters. Both Vaccine Rule 14, which describes the role of "attorneys" in general, and subsection 14(b)(3), which is titled "Signing Filings," contain instructions that apply only to the attorney of record in a particular case. Respondent would apply subsection 14(b)(3) to every type of filing that is made in a Vaccine Act case. However, it

7

is notable that at least three Vaccine Rules (*i.e.*, Rules 8, 15, and 17) discuss filings by individuals who may *not* be the attorney of record.

Vaccine Rule 8(a) provides general guidance concerning "Taking Evidence," emphasizing that the "special master will determine the format for taking evidence." This is a very broad grant of authority, allowing the special master complete flexibility to gather evidence, without any caveats as to what kind of entities may provide such evidence. Furthermore, "[i]n receiving evidence, the special master will not be bound by common law or statutory rules of evidence but must consider all relevant and reliable evidence." Vaccine Rule 8(b)(1). This subsection amplifies that authority by removing the typical restrictions imposed by both common law and statutory law. In granting that authority, subsection 8(b)(1) imposes the strong requirement that the special master, "*must* consider *all* relevant and reliable evidence." (Emphasis added.) Nothing in this subsection suggests that only evidence filed by counsel of record will be considered. To the contrary, such a restriction is explicitly rejected. This statutory language indicates that, once a special master has determined that an item of evidence is relevant and reliable, the special master is *required* to consider such evidence, whether or not it was filed by counsel of record.

Vaccine Rule 15 describes written information submitted by "third parties" with leave by the special master, while Vaccine Rule 17(b)(1) describes other documents filed "by order of the special master." Both of these Rules are consistent with the language set forth in the statute at §12(d)(iii); that is, "in conducting a proceeding on a petition, a special master may... require the testimony of *any person* and the production of *any* documents as may be reasonable and necessary." §12(d)(iii)(emphasis added). Vaccine Rules 15 and 17, in combination with the statutory language of §12(d), impose an affirmative obligation on the special master to consider relevant information from any person, not just from counsel of record or a *pro se* petitioner.

The use of the phrase "any person," emphasized above, clearly contemplates individuals who are *not* the attorney of record as defined by Vaccine Rule 14. *Neither* Vaccine Rule 15, concerning "Third Parties," nor Vaccine Rule 17(b), concerning "Filing Documents," includes the language of Vaccine Rule 14(b)(3), which requires all filings by an attorney to be signed by the attorney of record. Clearly, the language Respondent cited from Vaccine Rule 14(b)(3) pertains only to attorneys acting pursuant to Vaccine Rule 14, and merely indicates that such documents must be signed by the attorney *of record* (rather than, for example, the attorney of record's associate).

In this case, pursuant to Vaccine Rule 15, I determined that a third party, former counsel of record George Tankard, was an "interested individual" who possessed information relevant to the issue of attorney's fees and costs in this case. A member of my staff directed him to file that information. I hereby affirm that the instruction given by a member of my staff properly reflected my intention, pursuant to Vaccine Rule 8(b)(1), to allow Mr. Tankard to file "relevant and reliable evidence" concerning attorney's fees and costs. Guided by Vaccine Rule 17(b)(1), Mr. Tankard then submitted the relevant information, in a document styled as a "Motion" for attorney's fees and costs. In subsequent Orders, with proper notice to Petitioners, I gave Mr. Tankard leave to further elaborate on that information at a status conference, and to file a Reply to respondent's objections to his claim. In short, Mr. Tankard had the appropriate standing to

8

file his Motion, and his subsequent Reply to Respondent's Response, because he had been instructed to do so by myself, the presiding special master, pursuant to Vaccine Rule 17(b)(1). Therefore, Respondent's objection to Mr. Tankard's standing is overruled.

### C. Awarding attorney's fees in "unsuccessful" cases, under the Vaccine Act

In *Sebelius v. Cloer*, 133 S. Ct. 1886, 2013 WL 2149791 (2013), the U.S. Supreme Court addressed the possibility of awarding attorney's fees when the original petition was untimely filed. The Court observed that, "[t]he text of the statute is clear: *like any other unsuccessful petition*, an untimely petition brought in good faith and with a reasonable basis that is filed with-- meaning delivered to and received by -- the clerk of the Court of Federal Claims is eligible for an award of attorney's fees." (*Id.* at 1895.) The Supreme Court further opined that the Vaccine Act provides for an award of attorney's fees "'in *any* proceeding [on an unsuccessful] petition' if such petition was brought in good faith and with a reasonable basis, 42 U.S.C. § 300aa-15(e)(1), irrespective of the reasons for the petition's failure." (*Id.* at 1896, emphasis in original.) In citing this language from the Vaccine Act, the Supreme Court placed emphasis on the word "any," which is used to describe the type of proceeding that would qualify for an award of attorney's fees and costs; that is, "*any* proceeding on a petition" would qualify. Further, the Court included the clarification that attorney's fees and costs may be compensable for work performed on an unsuccessful petition, "irrespective of the reasons for the petition's failure." (*Id.*)

In this case, the petition was unsuccessful, due to Petitioners' failure to prosecute or prove the case. However, according to *Sebelius v. Cloer*, the reasons why this petition ultimately failed are not dispositive when considering an award of attorney's fees and costs. Further, in this case, the attorney in question *acted reasonably* during his tenure as counsel, and the dismissal came later, after the Petitioners' first chose to continue their suit without counsel, but later apparently chose to abandon their claim.

Petitioners were informed of the status conference at which Mr. Tankard's motion would be discussed, and they were invited to participate. While respondent's counsel and Petitioners' former counsel participated in that conference, the Petitioners did not participate. Petitioners' failure to participate cannot be used to justify a refusal to compensate their former counsel for fees earned while working on their petition. A special master has the discretion to consider relevant information provided by a third party under these circumstances. Vaccine Rule 8(c), as noted, mandates that the "special master *will* consider all relevant reliable evidence, governed by the principles of fundamental fairness to all parties." (Emphasis added.)

### D. Congress intended that attorneys receive payment in unsuccessful cases.

Attorneys who contemplate representing a petitioner under the Vaccine Act are aware that such claims are often unsuccessful. But if I were to adopt the approach suggested by the Respondent in this case, a potential attorney would face the possibility that he or she might not be compensated for work reasonably performed, if an unsuccessful petitioner declines to

9

cooperate with the court. Discouraging potential attorneys in this way would contradict the stated intentions of the drafters of the Vaccine Act. "One of the underlying purposes of the Vaccine Act was to ensure that vaccine injury claimants have readily available a competent bar to prosecute their claim." *Avera v. HHS*, 515 F. 3d 1343, 1352 (Fed. Cir. 2008) (citation omitted). One stated purpose of the scheme for awarding attorney's fees and costs under Vaccine Act is "to avoid 'limit[ing] petitioners' ability to obtain qualified assistance' by making fees awards available for 'non-prevailing, good faith claims.'" *Sebelius v. Cloer*, at 1895, citing H. R. Rept. No. 99-908, pt. 1, p. 22 (1986) (hereinafter "H.R. Rept.").

A further exploration of the legislative history cited by the Supreme Court in *Sebelius* shows that the Congressional committee that drafted the Vaccine Act, did "not intend that the limitation of fees to those included in the award act[s] to limit petitioners' ability to obtain qualified assistance and intends that the court make adequate provision for attorneys' time and that the court exercise[s] its discretion to award fees in non-prevailing, good-faith claims." H.R. Rept. at 22.; *see also Sebelius v. Cloer*, at 1895. Special masters are thereby instructed to exercise their discretion concerning fees and awards so as to compensate the attorneys of all petitioners who file reasonable, good faith claims, because doing otherwise would discourage the participation of qualified attorneys in the petitioners' bar. There is no indication that Congress intended to exclude payments to counsel whose former clients are unable or unwilling to support payment of fees for their former attorneys.

In sum, both the legislators who drafted the attorneys' fees provisions of the Vaccine Act, and the Supreme Court, which has twice interpreted those provisions, support appropriate compensation for counsel's efforts, in order to encourage the ongoing availability of qualified counsel. The language of the Vaccine Act clearly imposes a duty on special masters, and grants them broad authority, to seek whatever evidence may be relevant to requests for payment of attorneys' fees and costs. Appropriate compensation to petitioners' counsel is due for the reasonable work that they perform on Vaccine Act cases, pursuant to § 300aa-15(e)(1), even when the petitioners do not participate in the award process.

### E. Summary

In sum, for the reasons stated above, Respondent's objection to Mr. Tankard's "standing" to seek fees in this case is hereby overruled.

### V

### PAYMENT OF FEES AND COSTS DIRECTLY TO COUNSEL

At page 2, paragraph 12 of his motion for fees and costs, Mr. Tankard explicitly requested that the check for fees and costs be made *payable to counsel himself*. And while Respondent's Response to that motion explicitly raised the "standing" issue discussed above, ***Respondent did not object to the request for payment directly to counsel.***[9]

---

[9] Accordingly, pursuant to Vaccine Rule 8(f)(1), on any review of this Decision, Respondent would be precluded from objecting to the method of payment in this case.

10

Further, in this case where the *pro se* Petitioners have not responded to numerous outreach efforts by both their attorney and this court, it is highly unlikely that an award of attorneys' fees made payable to *jointly* to Petitioners and their former counsel, as is often done in Vaccine Act cases, would ever reach counsel.

In similar circumstances in recent Vaccine Act cases, in which the petitioners themselves cannot be located or are uncooperative, special masters have used their discretion to specify that a fees and costs award be made directly to an *attorney*. See *Tutza v. HHS*, No. 04-223V, 2012 WL 2362594 (Fed. Cl. Spec. Mstr. Apr. 20, 2012); *Gitesatani v. HHS*, No. 09-799V, 2011 WL 50250061 (Fed. Cl. Spec. Mstr. Sept. 30, 2011).[10]

Therefore, in this case, I direct that the check for attorneys' fees and costs be made payable directly to the attorney in question.

## V

## CONCLUSION

I find that this petition was brought in good faith, and that there existed a reasonable basis for the claim. Therefore, an award for fees and costs is appropriate, pursuant to 42 U.S.C. § 300aa-15(b) and (e)(1). Further, the proposed amount seems reasonable and appropriate. **Accordingly, I hereby award the total of $6,401.70 as a lump sum, in the form of a check payable to Petitioners' former counsel, George G. Tankard, III.** The check shall be sent to:

> George G. Tankard, III
> Law Offices of George G. Tankard, III
> 5811 Laurel Leaves Lane
> Clarksville, MD 21029

In the absence of a timely-filed motion for review filed pursuant to Appendix B of the Rules of the U.S. Court of Federal Claims, the clerk of the court shall enter judgment in accordance herewith.[11]

---

[10] See also *Ortiz-Mutilitis v. HHS*, No. 03-59V, 2012 WL 3902472, at fn. 9 (Fed. Cl. Spec. Mstr. Aug. 14, 2012), where the special master noted that--

> as discussed in Tutza, 2012 WL 2362594, I maintain that under certain narrow circumstances, a special master may award attorney fees and costs directly to counsel, who is the real party in interest in all fees application.

[11] The Clerk of this Court is also directed to send a courtesy copy of this Decision to Mr. Tankard, at the above address.

11

**IT IS SO ORDERED.**

George L. Hastings, Jr.
Special Master